85 114
27ap479

THE PEOPLE OF THE STATE OF NEW YORK ex rel. JESSE READ, Appellant, v. THE BOARD OF TOWN AUDITORS OF THE TOWN OF SMITHVILLE in the County of Chenango and State of New York, Respondent.

*Powers of towns — resolution passed at a town meeting authorizing the raising of money — chapter 122 of 1883 — "audit" defined — powers of a board of town auditors — its determination cannot be reviewed by mandamus.*

Towns and other municipal corporations are organized for governmental purposes, and their powers are limited and defined by the statute under which they are constituted. They possess only such powers as are expressly conferred or necessarily implied.

Where, subsequent to the passage of chapter 122 of the Laws of 1883, the vote in a town meeting authorizing the raising of money or incurring of a town liability exceeding $500 was not by ballot, the resolution so passed is invalid.

The term "audit," as applied to the action of a board of town auditors, means to hear and examine, and includes both the adjustment or allowance and the disallowance and rejection of an account.

The jurisdiction of a board of town auditors over claims is not only original, but its decision is conclusive until reversed or modified by another court in proceedings by certiorari, and where a board of town auditors has passed upon, disallowed and rejected, as against a town, a claim presented to it (which is not an absolute statutory liability), its determination cannot be reviewed by mandamus.

APPEAL by the relator, Jesse Read, from an order of the Supreme Court, made at the Chemung Special Term and entered in the office of the clerk of the county of Chenango on the 8th day of May, 1894, denying the relator's motion for an order directing and commanding the board of town auditors of the town of Smithville, county of Chenango and State of New York, to meet in said town and consider and pass upon and audit a certain claim theretofore

presented by the relator or to show cause why it should not so meet, consider and audit the said claim.

In December, 1870, the town of Smithville issued several town bonds in aid of a railroad. At the town meeting in 1887 a resolution was passed as follows : " *Resolved*, that the chairman, George W. Church, appoint a committee of three to look after the town bonds." The resolution was carried, and the chairman appointed John P. Davis, Jesse Read, the relator, and Samuel Cline as such committee. At the annual town meeting held in Smithville at the town hall on the 21st of February, 1888, it appears by the record thereof that " the following proceedings were had and resolutions were duly passed, to wit : The report of Jesse Read, committee on refunding town bonds, was duly made by Mr. Read, and on motion made and carried, the said report was accepted and approved. *Resolved*, that Jesse Read be continued a committee to refund or purchase the bonds of the town of Smithville, issued December 24th, 1870, and that he be allowed for his services as such committee five per cent on all bonds that may be or have been funded or purchased subsequently to February 14th, 1887." On the 9th of November, 1893, the relator presented his claim in writing, duly verified by him, to the board of town auditors of the town of Smithville, " whereby he asked payment from the said town the aforesaid sum of $2,855, and four years' interest thereon ($685.20), amounting to $3,540.20. The said account was received by said board, who thereafter acted on the same, and refused to allow deponent's said claim or any part thereof, and rejected the same." It appears that " the said board unanimously determined and decided that the said claim of the said Jesse Read was invalid and without merit as a claim against the town of Smithville, and duly audited the same and unanimously rejected it, and made a minute of their rejection." And after stating several facts relating to the origin and history of the claim made by the relator, the auditors completed their statement in regard to said claim in the following language : " We do, therefore, certify, find, decide and determine that the said annexed claim of the said Jesse Read is illegal and void, is not a legal charge against the town of Smithville, Chenango county, N. Y., and that same is hereby passed upon, disallowed and rejected, and each and every part thereof." Numerous affidavits were used at the Special Term relating to the claim and its rejection.

116    PEOPLE ex rel. READ v. TOWN AUDITORS.

FOURTH DEPARTMENT, FEBRUARY TERM, 1895.    [Vol. 85.

*A. W. Cumming*, for the appellant.

*John W. Church*, for the respondent.

HARDIN, P. J. :

In *Wells* v. *Town of Salina* (119 N. Y. 280) it was said that "towns and other municipal corporations are organized for governmental purposes, and their powers are limited and defined by the statutes under which they are constituted. They possess only such powers as are expressly conferred or necessarily implied."

Appellant's learned counsel seeks to support the claim of the relator by referring to the several statutes relating to the bonding acts and provisions therein in relation to refunding at a lesser rate of interest. Chapter 75 of the Laws of 1878 provided for the issuance of new bonds in place of existing bonds, and in the 2d section of the act it was provided that the exchange of existing bonds was to be made under the supervision of "the constituted and statutory authorities of any such village, city, town or county;" and in the 5th section it was provided that "nothing in this act contained shall be so construed as to permit any village, city, town or county in this State to increase its present bonded indebtedness." And in chapter 317 of the Laws of 1878 section 2 was amended and power was given "the said officers or boards of any such village, city, town or county" to make such exchange, etc. And in chapter 522 of the Laws of 1881 further provision was made in respect to indebtedness of towns being paid by the issue of new bonds; and in section 4 it is provided, viz. : "It shall be the duty of the railroad commissioners, supervisors and financial officers of towns, villages, cities and counties, having in charge the moneys received and collected, and responsible for the payment of the interest and principal due on bonds under this act, and they are hereby required to report annually to the board of supervisors of counties, the trustees of villages and the mayor and board of aldermen or common council of cities, as the case may be." And in chapter 316 of the Laws of 1886 further provision was made for the issuing of new bonds "by the board of trustees, mayor or common council, town board, board of supervisors or supervisor, or railroad commissioners, or officer or officers now having in charge according to law the payment of interest or principal on bonds," etc.; and in section 4 it was made

the duty of "the railroad commissioners, supervisors and financial officers of towns, villages, cities and counties, having in charge the money received and collected, and responsible for the payment of the interest and principal due on bonds issued under this act," to report annually to the board of supervisors of the counties, trustees of villages and mayor and board of aldermen and common council of cities, the sum due and payable the succeeding year; and in the 6th section of that act the commissioners were required to execute official bonds before entering upon the discharge of their duties under the act.

We find no provision in any of the statutes to which reference has been made expressly authorizing the appointment of agents or attorneys to discharge the duties that are imposed upon the several governmental officers mentioned in the several statutes to which we have referred.

By chapter 122 of the Laws of 1883 it was provided, viz.: "All votes in town meetings authorizing the raising of money or incurring any town liability exceeding five hundred dollars shall be by ballot;" and the 2d section of that act provided that the town clerk shall give twenty days' notice, posted in five conspicuous places, of any proposed appropriation or tax for the raising or borrowing of money, etc. The 2d section was amended by chapter 82 of the Laws of 1885, providing that the notice to be given by the town clerk shall be for five days only. It is contended that the resolution of the town passed in 1888 is invalid because the votes thereon were not taken as prescribed in section 1 of the statute of 1883, by ballot. If force is to be given to that vote or the action of that town meeting establishing a liability on the part of the town to pay the relator, then it seems that it falls within the direct language of section 1, as it is there provided that all votes "incurring any town liability exceeding five hundred dollars shall be by ballot." Such seems to have been the construction put upon the provisions of the section by the relator as well as by the board of audit; for thereafter an application was made to the board of supervisors of the county to legalize or confirm the action of the town board in 1888 under the provisions of chapter 326 of the Laws of 1885. In the last-mentioned act power was given to the board of supervisors so that they could "by a two-thirds vote of all the members elected thereto,

legalize the informal acts of any town meeting in raising money for any purpose for which such money is authorized to be raised by law, and by like vote to legalize the irregular acts of any town officer," etc. Upon a full hearing before the board of supervisors of the application to legalize the action of the town board and to place the claim presented by the relator upon the schedule of the town, after a full consideration of the whole matter relating to the merits of the relator's claim, as well as to the sufficiency of the resolutions and authority claimed to have been conferred, the board of supervisors refused to legalize the action of the town board by sanctioning the resolution of 1888, and refused to audit and allow the claim of the relator. The conclusion seems to follow, therefore, from the foregoing state of facts, that the town board has rejected the claim of the relator as well as the board of supervisors, and that there is no authority warranting the town board in auditing and allowing the claim of the relator.

In *People ex rel. Myers* v. *Barnes* (114 N. Y. 317) it was held: "The term 'audit' as applied to the action of a board of town auditors, means to hear and examine; it includes both the adjustment or allowance and the disallowance and rejection of an account," and in that case it is said that the jurisdiction of the board of town auditors over claims "is not only original, but its decision is conclusive until reversed or modified by another court in the manner prescribed by law, *i. e.*, in proceedings by certiorari," and near the close of the opinion in that case it was said : "The relator has failed to establish by the evidence contained in the record the absolute liability of the town for the whole or part of any one of the claims," and for that reason the case did not fall within that class of cases where there is a statutory liability creating legal charges against a town as in the cases of *People ex rel. Johnson* v. *Board of Supervisors of Delaware Co.* (45 N. Y. 196) and *People ex rel. Thurston* v. *Town Auditors of Elmira* (82 id. 80).

In *People ex rel. Durant Land Imp. Co.* v. *Jeroloman* (139 N. Y. 17) it was said that a mandamus is only granted in the sound discretion of the court. (See, also, *People ex rel. Millard* v. *Chapin*, 104 N. Y. 96.) Nothing is found in the case of *Wells* v. *Town of Salina* (55 N. Y. St. Repr. 95; S. C., 71 Hun, 559) inconsistent with the views already expressed, as in that case "the

town board did not act upon the claim," and it was, therefore, said that what took place before the board was not an adjudication that formed a bar to any further proceedings on the part of the plaintiff. We think the action of the Special Term denying the writ should be sustained.

MARTIN and MERWIN, JJ., concurred.

Order affirmed, with ten dollars costs and disbursements.

